THOMAS S. McHENRY, Respondent, v. ROYAL NEIGHBORS OF AMERICA, Appellant.

In the Kansas City Court of Appeals, May 22, 1922.

1. INSURANCE: Representations: Warranties: Representations Made by Applicant for Membership in Fraternal Beneficiary Society Considered Warranties and When False Avoid Policy. Representations made by an applicant for membership in a fraternal beneficiary society are considered as warranties, and when false, will avoid the policy.

2. ———: ———: ———: Pills or Tablets Prepared and Used by Physician in His Practice as Regulatory Potions and Sold Without Any Claim That They Were in Any Sense Patent or Propiretary Medicines, Held Not to be Patent or Proprietary Medicine Within Warranty in Application for Fraternal Insurance. Pills or tablets prepared by physician for use in his practice as regulatory potions and sold without any claim that they were in any sense patent or proprietary medicines, held not to be patent or proprietary medicines within a warranty contained in application for fraternal insurance that applicant had not used any patent or proprietary medicines within a period of three years.

3. ———: Beneficiary Not Precluded from Denying Truth of Report of Physician by Signing Proofs of Death Presented by Insurer Before Physician's Report Was adopted as a Part of Proofs. Where beneficiary under fraternal benefit certificate following instructions of insurer signed proofs of insured's death as presented to him by the insurer before report of a physician which was adopted in making up proofs had been submitted, beneficiary was not precluded from denying the truth of such report.

4. ———: Whether Insured Answerd Falsely Questions in Her Application for Insurance Held For the Jury. Under the evidence the question of whether or not insured answered falsely any of the questions in her application for insurance was for the jury.

Appeal from the Circuit Court of Bates County.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*T. W. Silvers* for respondent.

*Benjamin D. Smith* and *Humphrey & Boxley* for appellant.

ARNOLD, J.—This is a suit to recover on a fraternal beneficiary certificate issued by defendant on the life of plaintiff's wife.

Defendant is a fraternal benefit association organized under the laws of the State of Illinois and legally authorized to do, and doing business in the State of Missouri. Charlotte Elizabeth McHenry, wife of plaintiff, applied for membership in defendant association at the town of Foster in Bates County, Mo. on March 29, 1915. A certificate of insurance in the sum of $500 was issued to her April 22, 1915, in which plaintiff was named as beneficiary. The insured died December 29, 1919, of acute Bright's disease, and proofs of death were furnished upon blanks prepared by defendant association. Defendant denied liability and declined to pay the loss. Plaintiff sued on the benefit certificate and defendant pleaded misrepresentation in the application for the certificate.

The petition charged formal matters which tend to show the corporate description and existence of defendant and that defendant issued to deceased benefit certificate No. 353817, which insured her against death in the sum of $500, and that deceased was a member of Violet Camp No. 2825, at Foster, Mo.

Further the petition alleges that deceased performed all of the things necessary on her part to be kept and maintained her certificate in force during her lifetime, and that the same was in force and effect at the time of her death; That defendant was duly notified by plaintiff of the death of the certificate holder, according to the terms and provisions of the said benefit certificate, and that defendant has refused to pay plaintiff the sum of

$500, or any other amount, on the ground that misrepresentations were made by deceased in her application for insurance as to her physical condition prior to, and at the time of such application. The petition further states that there were no misrepresentation made by the applicant that would warrant the defendant in refusing to pay plaintiff, but on the contrary, the facts set forth in the application of the insured were substantially true. Judgment is prayed for the face of the certificate.

The answer admits the corporate existence of defendant, the issuance of the benefit certificate, the consideration and covenants upon which the said certificate was issued; the date of death of the certificate holder, due notification of death, and that among other reasons for denying plaintiff's claim and refusal to pay the amount of the certificate was the fact that, in her application for insurance, Charlotte Elizabeth McHenry had made misrepresentations as to her physical condition at and prior to the time of such application, all as set out in the petition.

The answer denies (1) that the insured performed all the provisions necessary on her part to keep and maintain the policy in full force and effect during her lifetime; (2) that the benefit certificate was in full force and effect at the time of the death of the insuerd; (3) that insured made no misrepresentations in her application for membership; (4) that the misrepresentations admittedly made by insured were insufficient in law to warrant defendant in refusing to pay plaintiff the amount demanded and that the application of insured contained matter, answers and statements that were substantially true.

And as an affirmative defense, the answer avers (1) that defendant is a fraternal association without capital stock, and that it was organized and is carried on for the mutual benefit of its members and not for profit; (2) that defendant has a supreme governing, or legislative body, composed of delegates elected by subordinate bodies which promulgates laws, rules and regulations governing

all subordinate lodges; (3) that defendant has a constitution and by-laws providing an adequate scheme of government; (4) that the Violet Camp of Foster, Mo., was and is operating as a part and branch of this general scheme.

Further the answer states, among other things that the benefit certificate issued to the insured contained stipulations, in effect, as follows: That she accepted the certificate and agreed to all the conditions therein contained, and warranted that she was in good health on receiving it; that she accepted same under the conditions enumerated on the back thereof, one of which is that the application and medical examination are made a part of the contract for insurance, and "Second: That should said application, and each and every part thereof, not be literally true, then this benefit certificate shall, as to the member, the beneficiary or beneficiaries, be absolutely null and void." That the following questions were propounded, and the answers thereto made by the applicant:

"18a. Have you within the last seven years consulted any person, physician or physicians in regard to personal ailment? No.

. . . . . .　　　. . . . . .　　　. . . . . .
"21a. Have you within the last three years used any patent or proprietary medicine? No.

. . . . . .　　　. . . . . .　　　. . . . . .
"25. Have you ever had any disease of the following named organs or any of the following named diseases or symptoms?

. . . Kidney disease . . . . No.　　　Liver . . . . No."

The answer then avers that the foregoing answers were false and untrue, and that if the truth thereof had been known to defendant, the benefit certificate would not have been issued herein; that no contract ever existed between defendant and Charlotte Elizabeth McHenry whereby plaintiff herein acquired or became entitled to any rights of any kind or character, and particularly any right to participate in the benefit fund of defendant.

The reply was a general denial.

On the issues thus made the cause went to trial to a jury. At the close of plaintiff's evidence and again at the close of all the evidence, defendant asked a peremptory instruction in the nature of a demurrer to the evidence, both of which the court refused. Verdict was for plaintiff and defendant appeals.

In its assignments of error, defendant urges that the court erred in refusing to give the peremptory instructions asked at the close of plaintiff's case and at the close of all the evidence. These are the only points urged in behalf of this appeal and they will be considered as one.

Defendant argues that the applicant, as part of the consideration for insurance, declared and warranted as literally true, the answers in her application, and states that if said answers were not literally true the benefit certificate is null and void; that a warranty is part of the contract and must be strictly true, whether material to the risk or not, and that this rule applies even though the misrepresentations were innocently made.

It is a rule of law strictly adhered to in this State, that representations made by an applicant for membership in a fraternal beneficiary society are considered as warranties, and when false, will avoid the policy. [Cromeens v. Woodmen of the World, 233 S. W. 287, 290; Valleroy v. Knights of Columbus, 135 Mo. App. 574, 116 S. W. 1130; Hoagland v. Modern Woodmen, 157 Mo. App. 15, 137 S. W. 900.] In the Cromeens case it was held that "in fraternal policies the insured may give answers touching the condition of his health, etc., in perfect faith, and in ignorance of their falsity, yet if it turns out that he was in error, and the policy provides, as here, that such will avoid the policy, then the policy is void."

The terms of the by-laws governing the conditions upon which applicants may be received as beneficiary members are valid. This has been upheld a great num-

ber of times in this State. [Brittenham v. W. O. W., 180 Mo. App. 523, 167 S. W. 587; Hubbard v. Modern Brotherhood, 193 S. W. 911; section 6418, R. S. 1919.] It is in evidence and undisputed that the applicant warranted her answers to be true.

In Pacific Mut. Life Ins. Co. v. Glaser, 245 Mo. 377, 387, the court said:

"A warranty is a part of the contract and must be strictly true, whether material to the risk or not. [Aloe v. Insurance Association, 147 Mo. 561; McDermott v. Modern Woodmen, 97 Mo. App. 636.]

In Cooley's Brief on the Law of Insurance, p. 1935, it is said:

"In pursuance of the general rule that statements and stipulations contained in or expressly made a part of the policy are warranties, it has been the generally accepted doctrine that where the application warrants the answers and statements therein to be full, complete, and true, and the policy recites that it is issued in consideration of the statements, agreements, and warranties in the application, which is referred to and made a part of the contract, such statements and agreements become warranties."

And at page 1954, it is further said:

"It is, however, well settled that a breach of warranty is fatal to the policy, though the insured had no knowledge of the falsity constituting the breach, and did not intend to deceive the insurer."

Defendant first urges that, as a violation of the warranty, as above defined, applicant had used pills, or tablets, of some description. The testimony tends to show that she had, at times, purchased tablets, or pills for her own or her family's use in regulating the bowels or liver. There is no testimony showing that she actually took any of these medicines. Admitting that she did, were these patent or proprietary medicines? The doctor who sold them testified they were merely regulatory potions which he had prepared for use in his practice. Webster defines "patent" as a writing securing

to an inventor for a term of years the exclusive right to his invention, while proprietary is defined as ''belonging or pertaining to a proprietor; considered as property owned; as a proprietary medicine.'' Also ''proprietary articles, manufactured articles which some persons have an exclusive right to make and sell.''

The physician who sold these pills or tablets to the insured testified that he did so without having prescribed them, and that he had prepared them for use in his practice, and made no claims that they were in any sense patent or proprietary. In the face of this evidence, we hold that the medicine so purchased was neither patent nor proprietary. Moreover, there was no testimony of a substantial character tending to show that this medicine was for the personal use of the insured.

This leaves for determination only the question as to whether the answers of the insured in her application, relative to prior treatment for kidney disease, were untrue.

The testimony of defendant's witness, Dr. Isaac H. Mason, tends to show that he treated applicant in the early part of February, 1915, for what he termed ''renal hyperaemia'' or congestion of the kidneys; that he gave her medicine once and that the treatment seemed to be satisfactory; that the date of this treatment was February 5, 1915. The witness then testified that his account book showed a charge of $1.50 for this treatment, as of February 8, 1915, to T. F. McHenry. The husband of the insured, plaintiff herein, is T. S. McHenry. Witness identified plaintiff as the husband for whose wife he prescribed. This witness further testified that this treatment was administered to the insured at a house which, at the time of the trial, was occupied by one Luther McConnell. Witness also stated that in determining at that time that insured was afflicted with kidney disease, he accepted her statement of symptoms, made no analysis of the urine, but based his diagnosis solely upon the symptoms indicated by plaintiff's wife at the time. Doctor Mason's testimony was the only

evidence introduced on behalf of defendant in its attempt to show that the answers of the insured, made in the application, were untrue and in violation of the warranty.

On this point the testimony of plaintiff and members of his family tends to show that deceased was in Kansas City and not at Foster at the time of the purported treatment by Doctor Mason in February, 1915, and that the family never at any time lived in the McConnell house. Plaintiff testified that he had no personal knowledge of such treatment and that no bill therefor ever had been rendered to him, and that if his wife had ever been so treated, she would have told him of it.

Testimony of another physician was introduced, in behalf of plaintiff, which tends to show that kidney disease is not positively determined except upon analysis of the urine, and that such an analysis is determinative of the existence or non-existence of such a disorder.

It is thus seen that the testimony on this point is conflicting. Plaintiff's testimony is of sufficient substantiality, at least, to warrant a reasonable conclusion in the minds of a jury that Doctor Mason was mistaken in his diagnosis in February, 1915, or that he was mistaken about having been consulted by the insured at all.

Defendant lays stress upon the fact that plaintiff, in making up his proofs of death, adopted the report of Doctor Mason. We fail to recognize any merit in this contention in the light of plaintiff's explanation of this circumstance to the effect that he was explicitly following the instructions of defendant. We hold that by signing the proofs as presented to him without the report of Doctor Mason having been submitted, plaintiff is not precluded from denying the truth of such report.

In this state of the record, the question of whether or not the insured answered falsely any of the questions in her application for insurance was for the jury, and there was no error in the ruling of the court in refusing to give the peremptory instructions asked by defendant. The judgment should be affirmed. It is so ordered. All concur.